| | |
|---|---|
| STATE OF MAINE<br>CUMBERLAND COUNTY, SS. | SUPERIOR COURT<br>CIVIL ACTION<br>DOCKET NO.: CV-16-347 |

| |
|---|
| Irving Oil Limited and Highlands Fuel Delivery, LLC,<br><br>         Plaintiffs,<br><br>v.<br><br>ACE INA Insurance,<br><br>         Defendant. |

**COMPLAINT FOR DECLARATORY RELIEF AND DAMAGES**

NOW COME Plaintiffs Irving Oil Limited ("IOL") and Highlands Fuel Delivery, LLC (f/k/a Irving Oil Corporation) ("Highlands"), by and through their undersigned attorneys, and based on information and belief and investigation of counsel, allege as follows against Defendant ACE INA Insurance ("ACE"):

## I. SUMMARY OF THE CASE

1. This is a civil action for declaratory relief and damages for breach of contract arising from Defendant's anticipatory refusal to defend or indemnify Plaintiffs under umbrella liability insurance policies in an underlying product liability action brought against Plaintiffs by the State of Rhode Island seeking damages and other relief as a result of their activities in refining, distributing and marketing gasoline containing the additive methyl tertiary butyl ether ("MTBE"). Plaintiffs seek, *inter alia*: (a) a declaration of the rights, duties, and obligations of the parties under the umbrella insurance policies issued to Plaintiffs by Defendant with respect to the Rhode Island action; (b) monetary damages and other relief for the harm caused by Defendant's anticipatory breach of its contractual obligations to defend and indemnify Plaintiffs

STATE OF MAINE
Cumberland, ss, Clerk's Office

SEP 07 2016

RECEIVED

with respect to the underlying Rhode Island action; and (c) attorneys' fees and costs for prosecuting this action.

## II.   THE PARTIES

2.   Plaintiff IOL is a corporation organized under the laws of the Province of New Brunswick, Canada, with its principal place of business in Saint John, New Brunswick. IOL is an energy processing and marketing company that refines and sells petroleum products, including gasoline.

3.   Plaintiff Highlands is a limited liability company organized under the laws of the State of Maine, is indirectly owned by IOL, and is engaged principally in the business of distributing heating oil, propane, diesel fuel and gasoline in northern New England. Prior to December 30, 2008, Highlands was known as Irving Oil Corporation. During the time periods relevant to this action, Highlands was engaged in the distribution and sale of petroleum and natural gas products, including gasoline, and maintained extensive operations and facilities in the State of Maine, including ownership of a major petroleum storage terminal in Searsport, Maine, administrative offices in Bangor, Maine, and franchised retail gasoline service stations and convenience stores located throughout the State of Maine.

4.   IOL and Highlands are collectively referred to herein as the "Plaintiffs" or as the "Irving Plaintiffs."

5.   Defendant ACE, formerly known as CIGNA Insurance Company of Canada, is a corporation organized under the laws of the Province of Ontario, with its principal place of business in Toronto, Ontario, Canada. ACE provides insurance and financial services products to customers in Canada and the United States, insures assets, operations and liability risks within the State of Maine, and provided umbrella liability insurance coverage to the Plaintiffs under the insurance policies listed in Attachment A hereto. These policies have been in effect from 1985

until at least 2004, and include "Territory of Coverage" provisions and/or "Coverage" clauses which expressly state that the policies provide coverage for occurrences happening "anywhere in the world" or "anywhere in the universe."

### III. JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction over this action pursuant to 4 M.R.S.A. § 105 and 14 M.R.S.A. §§ 5953, 5955, and 5957.

7. This Court has personal jurisdiction over Defendant ACE because: (a) ACE has voluntarily and intentionally insured, for substantial premiums, the assets, operations, products and liability risks of Highlands and other insureds within the State of Maine, including gasoline distribution and storage facilities that have given rise to the MTBE Lawsuits described below; and (b) ACE has sufficient minimum contacts with Maine and/or otherwise has availed itself of the benefits and protections of Maine law through the sale of insurance policies covering entities such as Highlands with a significant presence and longstanding operations in Maine. Those insurance policies contain "Territory" and "Coverage" provisions whereby the insurer has contractually undertaken to provide coverage for "occurrences" in geographic areas that include the State of Maine, in a manner so as to render the exercise of jurisdiction over Defendant by the Maine courts consistent with traditional notions of fair play and substantial justice.

8. Venue over this action in Cumberland County, where Highlands has established places of business and maintains significant operations, is proper pursuant to 14 M.R.S.A. § 505. This matter has been marked as related to BCD-CV-09-35 and is recommended for transfer to the Business and Consumer Docket, which has state-wide jurisdiction and in which venue is also proper.

## IV.    FACTUAL ALLEGATIONS

### THE RHODE ISLAND MTBE LAWSUIT

9. On September 6, 2016, the State of Rhode Island filed a lawsuit against the Irving Plaintiffs alleging, *inter alia*, that the Irving Plaintiffs and others, as refiners, marketers and distributors of major brand gasoline products containing the oxygenate additive MTBE, are subject to strict products liability for damage to water resources and other property damage resulting from accidental spills and leaks of gasoline containing MTBE and its breakdown byproducts (the "Rhode Island MTBE Lawsuit").

10. The Rhode Island MTBE Lawsuit was filed in the United States District Court for the District of Rhode Island against the Irving Plaintiffs, and is captioned *State of Rhode Island v. Alon Refining Krotz Springs, et al.*, No. CA16-495 (D.R.I.).

11. More than sixty lawsuits have been filed previously by various entities against the Irving Plaintiffs alleging claims almost identical, or very similar, to those contained in the Rhode Island MTBE complaint (collectively, the "MTBE Lawsuits"). The MTBE Lawsuits asserted claims for, *inter alia*, (a) products liability, including claims for alleged negligence in the design, refining, formulation, promotion, marketing, distribution, sale, testing, labeling, use, provision of product information and instructions for use of gasoline containing MTBE, and negligence in selling a product alleged to be unreasonably dangerous; and (b) strict liability for allegedly designing, refining, formulating, promoting, marketing, distributing and/or selling gasoline products containing MTBE and for failure to warn against various hazards associated with gasoline products containing MTBE. The MTBE Lawsuits alleged that at unspecified times from the late 1970s (when MTBE gasoline allegedly was first sold in the United States by certain petroleum producers) to the present, as a result of acts or omissions of the Irving Plaintiffs and others in the refining, marketing, distribution and retail sale of gasoline, MTBE from gasoline

products caused contamination of water resources, well fields, drinking water supplies, and other forms of property damage. The MTBE Lawsuits also allege that the production and use of MTBE in gasoline, and the harm to water resources caused by MTBE gasoline, greatly increased in the 1990s after the enactment of the 1990 Amendments to the federal Clean Air Act, which mandated the use of oxygenated fuel to reduce smog and carbon monoxide emissions. The MTBE Lawsuits have sought, *inter alia*, damages as a result of property damage allegedly caused by defective gasoline products refined by IOL and numerous other petroleum company defendants.

12. Many of the MTBE Lawsuits were dismissed on various grounds. The Irving Plaintiffs have settled all of the MTBE Lawsuits that were not dismissed with the exception of the Rhode Island MTBE Lawsuit and an MTBE Lawsuit filed in 2014 by the State of Vermont. The Irving Plaintiffs' primary insurance carriers have contributed to the defense and settlement of the MTBE Lawsuits. However, the Irving Plaintiffs incurred significant unreimbursed costs and expenses in connection with the investigation, defense, and settlement of the MTBE Lawsuits, and anticipate that they will incur additional costs and expenses in the future in connection with the defense of the Rhode Island MTBE Lawsuit.

## THE DISPUTE WITH ACE

13. The Irving Plaintiffs provided written notice to ACE of the initial round of MTBE Lawsuits in 2003 and informed ACE that the applicable products hazard limits of liability of the IOL primary policies underlying the ACE umbrella policies had been exhausted in certain potentially triggered years. The Irving Plaintiffs timely requested that ACE provide a defense to IOL and agree to indemnify both of them under the applicable ACE umbrella policies for any adverse judgment that may be entered in the MTBE Lawsuits. The Irving Plaintiffs also provided timely notice of subsequent MTBE Lawsuits, and also informed ACE of the settlement

5

of certain MTBE Lawsuits and requested that ACE agree to contribute towards settlement of those suits. In response, ACE repeatedly declined to acknowledge any coverage obligations for any of the MTBE Lawsuits.

14. On July 29, 2008, almost five years after it was first notified of the MTBE Lawsuits, and after repeatedly failing to investigate the Irving Plaintiffs' claims for coverage, make a coverage determination or undertake IOL's defense, ACE finally denied coverage for the MTBE Lawsuits.

15. In its belated disclaimer of coverage, ACE relied on a qualified pollution endorsement that actually operates to restore coverage for liability resulting from defined pollution events, including (a) the "violent breaking open or explosion of any plant, equipment or building," (b) "unintended fire, lightning, windstorm damage or explosion," (c) "collision, overturning or upset of any vehicle or railroad vehicle," and (d) the release or escape of the Irving Plaintiffs' petroleum products that have not been "discarded, dumped, abandoned or thrown away by others." Far from eliminating coverage for the MTBE Lawsuits, this endorsement was one of many coverage enhancements that ACE provided to IOL and Highlands in exchange for very substantial premiums.

16. The ACE umbrella policies in effect beginning in 2003 specifically state that the exclusionary language in the pollution endorsements does not apply under any circumstances "to Products or Completed Operations Hazards." The term "Product Liability" is defined as "liability for personal injury or property damage arising out of goods or products manufactured, sold, tested, handled or distributed by the Insured … if such use occurs after possession of such goods or products has been relinquished to others by the Insured … and if such use occurs away from premises owned, rented or controlled by the Insured …." This pollution endorsement, by

6

its own terms, does not apply to the claims alleged against IOL and Highlands in the Rhode Island MTBE Lawsuit.

17. The Rhode Island MTBE Lawsuit does not allege that the damage to the State's water resources resulted from the Irving Plaintiffs' gasoline products having been "discarded, dumped, abandoned or thrown away by others." Instead, the State alleges that the Irving Plaintiffs manufactured, refined, stored, distributed and sold a useful product -- gasoline containing MTBE -- and that as a result of defects in the design and manufacture of that product, and the Irving Plaintiffs' failure to warn downstream distributors and users of the hazards of MTBE, accidental leaks and spills of MTBE gasoline have caused damage to water resources in Rhode Island. The complaint alleges that such spills and leaks of MTBE gasoline occurred, or potentially occurred, at various points after 1979.

18. The allegations in the Rhode Island MTBE Lawsuit also fall within one or more of the restorative exceptions to the qualified pollution endorsement set forth in paragraph 15 *supra*.

19. In response to ACE's disclaimer of coverage for the prior MTBE Lawsuits, the Irving Plaintiffs brought an action in this Court against ACE (BCD-CV-09-35) ("the Related Action") seeking: (1) declaratory relief as to ACE's duty to defend the Irving Plaintiffs in certain MTBE Lawsuits, including suits brought by the State of New Hampshire and the State of Vermont; (2) declaratory relief as to ACE's duty to indemnify the Irving Plaintiffs for the settlement of certain MTBE Lawsuits; (3) damages resulting from ACE's breach of its contractual duty to defend IOL in certain MTBE Lawsuits; (4) damages resulting from ACE's breach of its contractual duty to indemnify the Irving Plaintiffs for certain MTBE Lawsuits; and (5) damages resulting from ACE's violation of 24 M.R.S.A. §§ 2436-A(1)(A), (B) and (D).

7

20. In the pending Related Action, which was transferred to the Business and Consumer Court, the Irving Plaintiffs moved for partial summary judgment seeking, *inter alia*, a declaration that: (1) ACE has a duty to defend IOL in a pending MTBE Lawsuit filed by the State of Vermont under umbrella liability insurance policies in effect from March 31, 1997 through March 31, 2004; and (2) ACE breached its duty to defend IOL against an MTBE Lawsuit filed by the State of New Hampshire which was settled in 2012. On February 9, 2016, the Business and Consumer Court issued an Order on the Irving Plaintiffs' motion holding that (1) ACE has a duty to defend IOL in the pending MTBE Lawsuit filed by the State of Vermont under ACE Policy No. XBC 601391 for the policy period from March 31, 1998 to March 31, 1999; (2) ACE had a duty to defend IOL beginning at least in 2005 in the MTBE Lawsuit filed by the State of New Hampshire under ACE Policy No. XBC 601391 for the policy period from March 31, 1998 to March 31, 1999; and (3) ACE has a duty to defend IOL in the pending MTBE Lawsuit filed by the State of Vermont under ACE Policy No. XBC 602609 for the policy period from March 31, 2003 to March 31, 2004.

21. The complaint in the Rhode Island MTBE lawsuit was filed on September 6, 2016. That complaint contains allegations and causes of action that are materially identical to the allegations made in the State of Vermont MTBE Lawsuit, the State of New Hampshire MTBE Lawsuit, and in the other prior MTBE Lawsuits.

22. The Irving Plaintiffs provided notice to ACE of Rhode Island's Notice of Intent to Sue on September 1, 2015. In response, ACE declined to acknowledge any coverage obligations owed to the Irving Plaintiffs in connection with Rhode Island's Notice of Intent to Sue.

23. The Irving Plaintiffs notified ACE of the Rhode Island MTBE Lawsuit after having previously notified ACE that the applicable products hazard limits of liability of the IOL

8

primary policies underlying the ACE umbrella policies had been exhausted in numerous potentially triggered years. The Irving Plaintiffs timely requested that ACE provide a defense to IOL and agree to indemnify both of them under the applicable ACE umbrella policies for any adverse judgment that may be entered in the Rhode Island MTBE Lawsuit.

24. ACE has not acknowledged its duty to defend the Irving Plaintiffs in any of the MTBE Lawsuits. To the contrary, in its July 29, 2008 denial letter, its Answer to the Second Amended Complaint in the Related Action, its multiple submittals opposing the summary judgment motion described in paragraph 20, and in its response to the Irving Plaintiffs September 1, 2015 letter, ACE has specifically and consistently denied having any duty to defend or to indemnify the Irving Plaintiffs in relation to the prior MTBE Lawsuits and any similar MTBE-related lawsuits that may be filed against them in the future. ACE's denials constitute an anticipatory breach of its duty to defend the Irving Plaintiffs in the recently-filed Rhode Island MTBE Lawsuit under the terms of the ACE Policies in effect from March 31, 1991 to March 31, 2004.

## THE POLICIES AT ISSUE

25. From 1985 until at least 2004, ACE duly executed, issued for delivery, and delivered to IOL and Highlands various umbrella liability insurance policies, in consideration of premiums paid by the Irving Plaintiffs. The policy numbers and effective dates of these policies (the "ACE Umbrella Policies") are set forth in Attachment A to this Complaint.

26. Each of the ACE Policies obligates ACE to pay on behalf of, or indemnify the Irving Plaintiffs for, all sums that they become legally obligated to pay as a result of property damage claims brought by third parties, so long as any part of the injury or damage for which the Irving Plaintiffs are liable occurred within the applicable policy period. The contractual obligation of ACE to pay such liabilities in full on behalf of the insured Irving Plaintiffs (known

9

as the "duty to indemnify") is subject only to the limits of liability expressly and unambiguously stated in each ACE Policy.

27. Certain of the ACE Policies also separately obligate ACE, "if limits of liability of the underlying insurance are exhausted," to defend the Irving Plaintiffs against any suit alleging liability for bodily injury, personal injury or property damage for which there may potentially be a duty to indemnify as set forth in paragraph 26. In addition, all of the ACE Policies obligate it to defend the Irving Plaintiffs against any suit that is "not within the terms of the coverage of underlying insurance but within the terms of coverage of this insurance," even if the applicable limits of the underlying policies are not exhausted. The obligation of ACE to provide the Irving Plaintiffs with a full defense against potentially covered suits (known as the "duty to defend") applies even if the allegations of the suit are groundless, false or fraudulent, and even if the policy language or underlying allegations are ambiguous.

28. The applicable products hazard limits of the underlying primary insurance policies issued to IOL are exhausted for the following policy periods: 3/31/1991 to 3/31/1992 (Policy No. XBC-599688); 3/31/1992 to 3/31/1993 (Policy No. CN M 11092); 3/31/1993 to 3/31/1994 (Policy No. CN M 12066); 3/31/1994 to 3/31/1995 (Policy No. XBC-601391); 3/31/1995 to 3/31/1996 (Policy No. XBC-601391); 3/31/1996 to 3/31/1997 (Policy No. XBC-601391); 3/31/1997 to 3/31/2003 (Policy No. XBC-601391); 3/31/2003 to 3/31/2004 (Policy No. XBC-602609).

29. The applicable products hazard limits of the underlying primary insurance policy issued to Highlands are exhausted for the following policy period reflected on Attachment A: 3/31/2003 to 3/31/2004 (Policy No. XBC-602609).

30. The Irving Plaintiffs have timely paid all premiums due under and have complied with all conditions of the ACE Umbrella Policies.

## COUNT I

(Petition For Declaratory Relief as to ACE's Duty to Defend)

31. Plaintiffs repeat and incorporate by reference the allegations in paragraphs 1 through 30 as if set forth in full herein.

32. This is a petition for declaratory judgment pursuant to 14 M.R.S.A. § 5955. Plaintiffs seek a judicial determination of their rights and the obligations and the duty of Defendant ACE under the ACE Umbrella Policies to defend IOL and Highlands against the Rhode Island MTBE Lawsuit and/or to pay the legal fees and other defense costs incurred by IOL in connection with the Rhode Island MTBE Lawsuit.

33. Defendant ACE has refused to acknowledge its contractual duty to defend IOL and Highlands against MTBE Lawsuits on the terms set forth above or to pay defense costs incurred by IOL in connection with those Lawsuits. The Irving Plaintiffs anticipate that Defendant ACE will refuse to acknowledge its obligation to defend the Rhode Island MTBE Lawsuit, which contains allegations materially identical to those in the other MTBE Lawsuits that ACE has refused to defend.

34. An actual and justiciable controversy exists between the Irving Plaintiffs and Defendant ACE with respect to the extent of Defendant's duty to defend IOL and Highlands in the Rhode Island MTBE Lawsuit, and to pay the defense costs incurred by the Irving Plaintiffs in connection with the Rhode Island MTBE Lawsuit. The issuance of declaratory relief by this Court will resolve some or all of this existing controversy between the parties.

35. Pursuant to 14 M.R.S.A. §§ 5960 and 5962, the Irving Plaintiffs also request an award of costs and such other and further relief as the Court may grant.

11

## COUNT II

(Petition for Declaratory Relief as to ACE's Duty to Indemnify)

36. Plaintiffs repeat and incorporate by reference the allegations in paragraphs 1 through 35 as if set forth in full herein.

37. This is a petition for declaratory judgment pursuant to 14 M.R.S.A. § 5955. The Irving Plaintiffs seek a judicial determination of their rights and the obligations and duties of Defendant ACE to indemnify them under the ACE Umbrella Policies for any settlement or judgment that may eventually be incurred by the Irving Plaintiffs in the Rhode Island MTBE Lawsuit.

38. Pursuant to the terms of the unexhausted ACE Umbrella Policies in effect from March 31, 1991 until at least March 31, 2004, Defendant ACE is obligated to indemnify the Irving Plaintiffs for any future settlement or adverse judgment arising out of the Rhode Island MTBE Lawsuit. ACE's duty to indemnify the Irving Plaintiffs for any settlement or judgment arising out of the Rhode Island MTBE Lawsuit is subject only to the limits of liability expressly and unambiguously stated in each ACE Umbrella Policy.

39. ACE has not agreed, and will not agree, to indemnify the Irving Plaintiffs for any adverse judgment or settlement in the Rhode Island MTBE Lawsuit in accordance with the terms and conditions of the ACE Umbrella Policies described above.

40. An actual and justiciable controversy exists between the Irving Plaintiffs and Defendant ACE with respect to ACE's duty to indemnify the Irving Plaintiffs for any settlement or judgment arising out of the Rhode Island MTBE Lawsuit. The issuance of declaratory relief by this Court will resolve some or all of this existing controversy between the parties.

41. Pursuant to the provisions of 14 M.R.S.A. §§ 5960 and 5962, Plaintiffs also request an award of costs and such other and further relief as the Court may grant.

## COUNT III

### (Anticipatory Breach of Contract – Reimbursement of Defense Costs)

42. Plaintiffs repeat and incorporate by reference the allegations in paragraphs 1 through 41 as if set forth in full herein.

43. Defendant ACE anticipatorily repudiated and breached its duty to defend the Irving Plaintiffs in the Rhode Island MTBE Lawsuit by consistently and repeatedly denying, as described above, its duty to defend them against the prior MTBE Lawsuits and by failing to promptly acknowledge its coverage obligations in response to the Irving Plaintiffs' September 1, 2015 communication.

44. As a direct and proximate result of ACE's anticipatory repudiation and breach of its duty to defend the Irving Plaintiffs with respect to the Rhode Island MTBE Lawsuit, they will be deprived of the benefit of defense coverage for which substantial premiums were paid to ACE, and they will be forced to pay substantial sums in order to defend themselves in the Rhode Island MTBE Lawsuit. ACE is required to reimburse the Irving Plaintiffs for all such defense costs under Maine law.

45. As a direct and proximate result of ACE's anticipatory repudiation and breach of its duty to defend the Irving Plaintiffs in the Rhode Island MTBE Lawsuit, they will be damaged in an amount to be proved, plus the interest thereon and costs and other sums incurred.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that the Court award them the following relief:

1. On their First Cause of Action, the Irving Plaintiffs respectfully request that the Court enter judgment:

13

(a) granting the Irving Plaintiffs' petition for declaratory judgment and declaring that ACE has a duty to defend IOL and Highlands in the Rhode Island MTBE Lawsuit and is obligated to pay the legal fees and other defense costs incurred by the Irving Plaintiffs in connection with the defense of the Lawsuit;

(b) declaring that ACE has a duty to defend the Irving Plaintiffs in any other lawsuits arising out of the refining, marketing, distribution and sale of gasoline containing MTBE that may be brought against them prior to entry of final judgment in this action;

(c) awarding to the Irving Plaintiffs, pursuant to 14 M.R.S.A. § 5962, such costs as are equitable and just, and such other and further relief as the Court may grant pursuant to 14 M.R.S.A. § 5960; and

(d) awarding such other and further relief as the Court deems appropriate.

2. On their Second Cause of Action, Plaintiffs respectfully request that the Court enter judgment:

(a) declaring that ACE is contractually obligated under each of the ACE Umbrella Policies in effect from March 31, 1991 until at least March 31, 2004 to indemnify the Irving Plaintiffs for any settlement of, or adverse judgment that may be entered in, the Rhode Island MTBE Lawsuit, subject only to any applicable limits of liability expressly stated in each of the ACE Umbrella Policies;

(b) awarding the Irving Plaintiffs, pursuant to 14 M.R.S.A. § 5962, such costs as are equitable and just, and such other and further relief as the Court may grant pursuant to 14 M.R.S.A. § 5960; and

(c) awarding such other and further relief as the Court deems appropriate.

3. On their Third Cause of Action, Plaintiffs respectfully request that the Court enter judgment:

    (a) awarding the Irving Plaintiffs damages resulting from ACE's breach of its duty to defend IOL in the Rhode Island MTBE Lawsuit, plus interest thereon, costs and fees and other sums incurred as consequential damages; and

    (b) awarding such other and further relief as the Court deems proper.

### Jury Demand

Plaintiffs request a trial by jury on all issues so triable.

Dated: September 7, 2016

*[signature]*

PERKINS THOMPSON
David B. McConnell (Bar No. 008133)
Dawn M. Harmon (Bar No. 009612)
One Canal Plaza
P.O. Box 426
Portland, Maine 04112
Tel.: (207) 774-2635
Fax: (207) 871-8026

Of Counsel:

COVINGTON & BURLING LLP
William F. Greaney
Rukesh A. Korde
One City Center
850 Tenth Street, NW
Washington, D.C. 20001
Tel.: (202) 662-6000
fax (202) 662-6291

...

## ATTACHMENT A: ACE UMBRELLA POLICIES

| Insurer | Policy Number | Start Date | End Date |
|---|---|---|---|
| CIGNA Insurance Company of Canada | XBC-177496 | 12/31/1985 | 1/31/1988 |
| CIGNA Insurance Company of Canada | XBC-177496 | 1/31/1988 | 3/31/1990 |
| CIGNA Insurance Company of Canada | XBC-177496-90 | 3/31/1990 | 3/31/1991 |
| CIGNA Insurance Company of Canada | XBC-599688 | 3/31/1991 | 3/31/1992 |
| CIGNA Insurance Company of Canada | CN M 11092 | 3/31/1992 | 3/31/1993 |
| CIGNA Insurance Company of Canada | CN M 12066 | 3/31/1993 | 3/31/1994 |
| CIGNA Insurance Company of Canada | XBC-601391 | 3/31/1994 | 3/31/1995 |
| CIGNA Insurance Company of Canada | XBC-601391 | 3/31/1995 | 3/31/1996 |
| CIGNA Insurance Company of Canada | XBC-601391 | 3/31/1996 | 3/31/1997 |
| CIGNA Insurance Company of Canada | XBC-601391 | 3/31/1997 | 3/31/2003 |
| ACE INA Insurance Company of Canada | XBC-602609 | 3/31/2003 | 3/31/2004 |